**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>William Joseph Vernon Palidwar,<br><br>Debtor. | Case No. 25-02358-eg<br>Chapter 7 |

**OBJECTION OF UNITED STATES TRUSTEE TO DEBTOR'S**
**MOTION TO CONVERT FROM CHAPTER 7 TO CHAPTER 13**

The Acting United States Trustee for Region Four ("UST") hereby objects to the Debtor's *Motion to Convert Case from Chapter 7 to Chapter 13* [ECF No. 27] (the "Motion") filed on September 11, 2025. This objection is filed pursuant to 28 U.S.C. § 586 and 11 U.S.C. § 307. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding. In support of this objection, the UST states that:

**CASE STATEMENT**

**The Debtor's Bankruptcy Case**

1. The Debtor filed a voluntary petition for relief pursuant to chapter 7 on June 20, 2025 (the "Petition Date"), initiating the present bankruptcy case.

2. The Debtor filed the required schedules and statements in his case under penalty of perjury on June 20, 2025 [ECF No. 1] (the "Original Schedules").

3. The Original Schedules show the following:

   a. Item 1 of Schedule A/B shows the Debtor does not own or have any legal or equitable interest in any residence, building, land, or similar property.

    b. Item 3 of Schedule A/B shows the Debtor owning, leasing, or having an equitable interest in three vehicles: (i) a 2023 CAN-Am Ryker; (ii) a 2011 Chevrolet Tahoe; and (iii) a 2024 Dodge Ram.

    c. Item 4 of Schedule A/B shows the Debtor has no watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories.

    d. Item 19 of Schedule A/B shows the Debtor only having an interest in RoadRunner Tire, LLC ("Road Runner Tire") valued at $0.00.

    e. Items 39 and 41 of Schedule A/B show that the only business-related property that the Debtor has or has an interest in is an old desk, computer, oil, tires, filters, and tools valued collectively at $3,000.

    f. In response to item 7 in the Debtor's Statement of Financial Affairs (the "SOFA"), the Debtor checked he had not made a payment on a debt to an insider in the year before the bankruptcy filing.

    g. In response to item 8 of SOFA, the Debtor checked he had not, within one year before he filed for bankruptcy, made any payments or transferred any property on account of a debt that benefited an insider.

    h. In response to item 18 of SOFA, the Debtor checked that he did not transfer any property to anyone outside the ordinary course of business within two years before the bankruptcy.

**The Original Meeting of Creditors**

4. On July 18, 2025, the Debtor gave sworn testimony at his meeting of creditors (the "Original Meeting of Creditors").

5. At the Original Meeting of Creditors, the Debtor testified as follows:

    a. He had reviewed his bankruptcy documents before they were filed.

    b. All information contained in his bankruptcy documents was true and correct.

    c. In addition to owning Road Runner Tire, he also owns RoadRunner Logistics SC LLC ("Road Runner Logistics"), which is a company used for driving trucks.

    d. Road Runner Tire's equipment is worth approximately $6,500.

    e. Road Runner Tire operates as a repair shop at property located at 6901 Edmund Highway, Lexington South Carolina (the "Road Runner Shop"). The Road Runner

      Shop is being purchased through a "rent-to-own contract" in the Debtor's name. The contract on the Road Runner Shop was entered into approximately three to four years ago in the amount of $60,000, and the Debtor still owes $50,000 or more on the contract.

f. He has never owned any real estate.

g. His residence at Macedon Drive in Lexington, South Carolina (the "Residence") is a "rent-to-own" contract consisting of a mobile home and two acres of real estate that he originally entered into in 2010 or 2012 at a contract price of $25,000 or $30,000. He owes approximately $15,000 on the contract.

h. He has not given away or sold any property within two years of the bankruptcy filing.

i. He has not paid a family member or friend $1,000 or more within the past year.

j. The only properties that he currently has under a "rent-to-own" arrangement are the Residence and the Road Runner Shop.

k. He and his ex-wife never owned real estate together.

l. He previously owned the property located next door to his Residence, 154 Macedon Drive (the "Macedon Drive Property"). The Debtor testified that he "forgot all about" the Macedon Drive Property.

m. He sold the Macedon Drive Property in 2023 for $85,000 (the "Macedon Drive Property Proceeds") and he used the Macedon Drive Proceeds to pay off credit cards and to give money to his ex-wife.

n. He previously owned property in North Carolina under a "rent-to-own" arrangement (the "North Carolina Property"). The Debtor sold the North Carolina Property on March 31, 2025 for $24,000 (the "North Carolina Property Proceeds") and all of the North Carolina Property Proceeds were given to his ex-wife "little by little" via transfers to his ex-wife's father.

o. He did not list the sale of the North Carolina Property in his SOFA because he "did not get the money."

p. The transfers of the Macedon Drive Property Proceeds and the North Carolina Property Proceeds to his ex-wife were not terms of their divorce decree.

q. He owns a 2009 Harley Davidson motorcycle.

6. The Original Meeting of Creditors was continued to August 1, 2025 (the "First Continued Meeting of Creditors").

**The First Continued Meeting of Creditors**

7. At the First Continued Meeting of Creditors, the Debtor testified that he was still trying to gather information related to the sale and purchase of real estate that he owned.

8. However, because the Debtor had not filed amended bankruptcy schedules or an amended SOFA prior to the First Continued Meeting of Creditors, the meeting of creditors was continued again to August 15, 2025 (the "Second Continued Meeting of Creditors").

**The Amended Bankruptcy Schedules and SOFA**

9. On August 11, 2025, the Debtor filed amended schedules and statements in his case under penalty of perjury [ECF No. 14] (the "Amended Schedules").

10. The Amended Schedules show the following:

    a. Item 1 of Schedule A/B shows the Debtor having a "future interest" in the Residence with a value of $25,600.

    b. Item 3.4 of Schedule A/B shows the Debtor owning a 2009 Harley Davidson motorcycle (the "Motorcycle") with a value of $11,095.

    c. Item 3.5 of Schedule A/B shows the Debtor owning a 2016 Shasta pull-behind camper (the "Camper") with a value of $19,750.

    d. In response to item 18 in the Debtor's Statement of Financial Affairs (the "Amended SOFA"), the Debtor identified the following transfers of property outside the ordinary course of business within two years before the bankruptcy:

        i. The transfer of the North Carolina Property in March 2025 for $20,000.

        ii. The transfer of the Macedon Drive Property on November 22, 2023 for $79,513.99.

        iii. The transfer of a 2021 Staircraft pontoon boat and 2020 outboard motor (collectively, the "Boat"), with the proceeds of $24,076.15 being paid directly to South State Credit Union.

**The Second Continued Meeting of Creditors**

11. On August 15, 2025, the Debtor gave sworn testimony at the Second Continued Meeting of Creditors.

12. At the Second Continued Meeting of Creditors, the Debtor testified as follows:

   a. All information contained in his Amended Schedules and Amended SOFA was true and correct.

   b. As to the Residence, the Debtor testified that he has a rent-to-own land contract as to this property and owes approximately $12,000-$13,000 on the contract.

   c. As to the Macedon Drive Property, the Debtor testified that:

      i. This property was originally owned in his and his ex-wife's name, and when the Macedon Property was sold, both still owned this property.

      ii. This property was sold "a year or two ago" for $74,000 with the proceeds being used to pay credit cards.

   d. The Camper is in salvaged condition and is only worth $3,000-$4,000. The Debtor was not sure why the Camper was valued at $19,750 in the Amended Schedules.

   e. The Motorcycle and the Camper were not included in the Original Schedules because "he was under stress" and was not thinking about it.

   f. In addition to the vehicles listed in Schedule A/B in the Amended Schedules, the Debtor also owns (i) a 2009 Chevrolet Tahoe that he uses for a parts car, (ii) a 2020 open bed flat trailer, and (iii) a horse trailer that were not listed in Schedule A/B.

   g. The original contract price for the Road Runner Shop was $85,000, he paid a $25,000 down payment, and currently owes approximately $38,000 on the contract.

   h. He sold the North Carolina Property through Facebook Marketplace for $20,000 cash, and with these cash proceeds, he made repairs to the Residence and purchased supplies for his children.

   i. His prior testimony regarding the North Carolina Property Proceeds being paid to his ex-wife via transfers to his ex-wife's father was a mistake.

**Information in the Public Record**

5

13. The Residence was conveyed to the Debtor by deed dated January 5, 2010 and recorded in the Office of the Register of Deeds for Lexington County on January 14, 2010 in Book 14051 at Page 350. The Residence is also encumbered by a mortgage in favor of Douglas A. Learn in the amount of $24,000, with such mortgage being recorded in the Office of the Register of Deeds for Lexington County on January 14, 2010 in Book 14052 at Page 1.

14. The Debtor sold the Macedon Drive Property on November 29, 2023 for $85,000 by deed from the Debtor to Kathryn R. Gruher recorded in the Office of the Register of Deeds for Lexington County in Book 21083 at Page 4807.

15. The Road Runner Shop was conveyed to the Debtor by a Contract for Deed dated February 1, 2021 and recorded in the Office of the Register of Deeds for Lexington County in Book 20921 at Page 3487. Pursuant to the contract, the Debtor agreed to purchase the Road Runner Shop for $85,000, with Debtor making a $25,000 non-refundable down payment and by making monthly payments thereafter beginning on March 1, 2021 with a final payment due on February 1, 2031.

**Current Status of the Debtor's Bankruptcy Case**

16. On August 15, 2025, the chapter 7 trustee declared the case to be an asset case.

17. The deadline for the UST to file a complaint objecting to the Debtor's discharge is September 16, 2025.

**LEGAL ARGUMENT**

Section 706(a) of the Bankruptcy Code provides: "The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1209 or 1307 of this title." 11 U.S.C. § 706(a). However, "[a] debtor's right to convert from chapter 7 to 13, however, is not absolute… a debtor does not have an absolute right to convert to Chapter 13 under § 706(a) if the debtor (a) is not eligible for chapter

6

13 under the requirements and limits of § 109(e), *or (b) has engaged in bad faith conduct—pre-petition or during the pendency of the Chapter 7 case—sufficient to constitute "cause" that would ultimately warrant dismissal or reconversion of the Chapter 13 case under § 1307(c)."* *In re Elmore*, 668 B.R. 122, 128–29 (Bankr. D.S.C. 2025) (citing *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (emphasis added)). An example of bad faith sufficient to warrant denial of a debtor's motion to convert to chapter 13 includes failing to disclose all assets on bankruptcy schedules. *In re Cilwa*, No. 15-00263-HB, 2016 WL 2641963, at *4 (Bankr. D.S.C. Apr. 14, 2016); *In re Gabriel*, 390 B.R. 816, 820 (Bankr. D.S.C. 2008); *In re Autry*, No. 24-50215, 2024 WL 4131856, at *3 (Bankr. M.D.N.C. Aug. 15, 2024) (denying debtor's motion to convert based on the debtor's material misstatements and omissions in the debtor's schedules and statements and holding, "[n]umerous decisions, including those from this Court, have found that a debtor's concealment of assets and transfers can constitute bad faith sufficient to deny conversion.")

"The burden of proof on the motion to convert is on the debtor. The debtor must first make a *prima facie* case for conversion (showing that there has been no prior conversion of the case, that the debtor is eligible for relief under § 109, and that conversion is to achieve a purpose permitted under the proposed Chapter). The burden of coming forward with evidence then shifts to the objecting parties to show that the debtor is not eligible for relief under *Marrama*." *In re Cilwa*, 2016 WL 2641963, at *3 (citing *In re Broad Creek Edgewater, LP*, 371 B.R. 752, 757 (Bankr. D.S.C. 2007).

Here the Debtor has engaged in conduct that indicates bad faith. The Debtor made several false oaths or accounts when he failed to disclose under penalty of perjury:

    a. his interests in Road Runner Logistics; and

7

    b. the correct value of Road Runner Tire's equipment; and

    c. the Motorcycle; and

    d. the Camper; and

    e. the 2009 Chevrolet Tahoe; and

    f. the 2020 open bed flat trailer; and

    g. the horse trailer; and

    h. the Road Runner Shop; and

    i. the Residence; and

    j. the sale of the Macedon Drive Property; and

    k. the sale of the North Carolina Property; and

    l. the sale of the Boat; and

    m. the transfer of funds to his ex-wife from the Macedon Drive Proceeds; and

    n. the transfer of funds from the North Carolina Property Proceeds; and

    o. transfers to insiders within one year of the bankruptcy filing; and

    p. his transfer of property within two years of the bankruptcy filing.

The Debtor also made several false oaths or accounts when he testified under oath at the Original Meeting of Creditors and the Second Continued Meeting of Creditors, regarding:

    q. that he never owned any real estate; and

    r. that he has not given away or sold any property within two years of the bankruptcy filing; and

    s. that he has not paid a family member or friend $1,000 or more within the past year; and

    t. that the Residence is subject to a rent-to-own contract; and

    u. that he owed $50,000 or more on the Road Runner Shop; and

    v. that he and his ex-wife never owned real estate together; and

    w. that the North Carolina Property Proceeds were given to his ex-wife "little by little" via transfers to his ex-wife's father; and

    x. that when the Macedon Drive Property was sold, both he and his ex-wife owned this property.

The Debtor's bad faith in this case supports the need for a trustee to control assets and investigate the Debtor's actions. Accordingly, the facts in this case support that the Motion should be denied.

    WHEREFORE, the UST requests that the Court enter its order denying the Motion and granting such other and further relief as the Court deems just and appropriate.

    Respectfully submitted,

    MATTHEW W. CHENEY
    ACTING UNITED STATES TRUSTEE
    REGION FOUR

    By: /s/ B. Keith Poston
    B. Keith Poston, Id. 10599
    Trial Attorney
    1835 Assembly Street, Ste. 953
    Columbia, SC 29201
    (803) 765-5218
    (803) 765-5260 (facsimile)
    Keith.Poston@usdoj.gov

Date:   September 11, 2025

**CERTIFICATE OF SERVICE**

   I, B. Keith Poston, do hereby certify that on September 11, 2025, I served the below-named parties with copies of the following documents:

**OBJECTION OF UNITED STATES TRUSTEE TO DEBTOR'S
MOTION TO CONVERT FROM CHAPTER 7 TO CHAPTER 13**

by mailing said copies to them by first-class, United States mail, postage prepaid, with return address clearly shown to said parties at the addresses shown below:

William Joseph Vernon Palidwar
160 Macedon Drive
Lexington, SC 29073

Benjamin R. Matthews
Benjamin R. Matthews & Associates
7909 Parklane Road
Suite 305
Columbia, SC 29223

and/or by electronic transmission through the Court's Electronic Case Filing system to include the following participant(s):

Benjamin R. Matthews
Janet B. Haigler

             By: /s/ B. Keith Poston
             B. Keith Poston, Id. 10599
             Trial Attorney
             1835 Assembly Street, Ste. 953
             Columbia, SC 29201
             (803) 765-5218
             (803) 765-5260 (facsimile)
             Keith.Poston@usdoj.gov